**IN RE M & O HOMEBUILDERS, INC., Orlando Cuello, Maria De Jesus Gamez, and Texas Homebuilders, LLC, Relators**

NO. 01–16–00602–CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued February 2, 2017

Rehearing En Banc Overruled March 7, 2017

Rhonda L. Allen, Karalynn C. Cromeens, Linda Johnson White, The Cromeens Law Firm, P.L.L.C., Houston, TX, for Relator.

R. Kelly Donaldson, R. Scott Wolfrom, Vicent Serafino Geary Waddell & Jenevein PC, Houston, TX, for Real party in interest.

Panel consists of Justices Jennings, Keyes, and Brown (Keyes, J., dissenting).

## OPINION

Harvey Brown, Justice

■ Paul Elizondo sued M & O Homebuilders, Inc., Orlando Cuello, Maria De Jesus Gamez, and Texas Homebuilders, LLC (collectively M & O) for damages in connection with the construction of a home. Seeking to remove a lien placed on the property by Elizondo, M & O[1] filed a summary motion and obtained an order removing the lien, but this order also disposed of all parties and claims and stated it was final and appealable.[2] The trial court issued a corrected order more than thirty days later, correcting the original order to remove the finality language. M & O now seeks a writ of mandamus to require the trial court to set aside this amended order on the ground that it was improperly signed outside the trial court's plenary power and is therefore void.[3] We grant the petition.

## Standard of Review

■ To be entitled to mandamus relief, a relator must show both that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004). When an order is void, "the relator need not show it did not have an adequate appellate remedy, and manda-

mus relief is appropriate." *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000).

## Analysis

M & O contends it is entitled to mandamus relief because the order signed by the trial court on March 11, 2016 was a final judgment, the trial court had no plenary power to sign the subsequent ay 9, 2016 amended order, and, as a result, the May 9 amended order is void. A trial court has plenary power to grant a new trial or modify a judgment within thirty days after signing the judgment. *See* Tex. R. Civ. P. 329b(d). Once that period expires, a judgment may not be set aside, though the trial court "may at any time correct a clerical error in the record of a judgment and render judgment nunc pro tunc under Rule 316 . . . ." *See id.* 329b(f).

*The March 11 order is a final judgment*

■ Whether the trial court had plenary power to enter the May 9 order depends upon whether the March 11 order was a final judgment. *See In re Daredia*, 317 S.W.3d 247, 249–50 (Tex. 2010) (per curiam). M & O contends the March 11 order is final because it contains an unequivocal expression of the trial court's intent to dispose of the case.

■ In *Lehmann*, the Texas Supreme Court addressed the issue of "when a judgment rendered without a conventional

---

1. Maria De Jesus Gamez is the sole director, officer, and shareholder of M & O Homebuilders. Her husband, Orlando Cuello, is employed by M & O. Texas Homebuilders was formed in 2013. Gamez and Cuello's daughter is a managing member of Texas Homebuilders.

2. The order in its recitals also mistakenly states that it grants relief to the plaintiff, not the defendant. But recitals in a judgment are rebuttable if they conflict with the record. *See Cannon v. ICO Tubular Servs., Inc.*, 905 S.W.2d 380, 387 (Tex. App.—Houston [1st Dist.] 1995, no writ), *abrogated on other*

grounds by *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 308 (Tex. 2000). Neither Elizondo nor our dissenting colleague contend that this obvious mistake created an ambiguity in the judgment.

3. The underlying case is *Paul Elizondo v. M & O Homebuilders, Inc., Orlando Cuello, Maria De Jesus Gamez, and Texas Homebuilders, LLC*, cause number 2014-07209, pending in the 190th District Court, Harris County, Texas, the Honorable Patricia Kerrigan, presiding.

trial on the merits is final for purposes of appeal."[4] *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001). A judgment is final if it "actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Id.* at 192–93. Thus, "if the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final." *Id.* at 206.

The Court gave an example of clear and unequivocal language that would leave no doubt that the trial court entered a final judgment: "This judgment finally disposes of all parties and all claims and is appealable." *Id.* This language is indistinguishable from the language in the March 11 order. The March 11 order states: "This judgment is final, disposes of all claims

and all parties, and·is appealable."[5] Thus, it states with "unmistakable clarity" that the trial court is rendering a final judgment as to all parties and claims.[6] *See id.* at 192–93. Because the March 11 order contains this clear finality language, it was final and appealable. In *Daredia*, the Texas Supreme Court re-affirmed that language such as that quoted in *Lehmann* would leave no doubt of a court's intention "to finally dispose of the case" and that this must be given effect even if the parties did not intend the judgment to be final. 317 S.W.3d at 248.

Outside the context of summary motions governed by Chapter 53 of the Property Code, numerous intermediate court decisions have held that a summary-judgment order was final and appealable when it contained similar finality language, but they reversed because the order disposed of claims that were not part of the sum-

---

**4.** Although *Lehmann* concerned a motion for summary judgment, the Court did not limit its ruling to summary judgments. The Court said, "We consider only cases in which one final and appealable judgment can be rendered and not cases, like some probate and receivership proceedings, in which multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001). And the Court held "that in cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Id.* at 192–93. One member of the Court expressed concerns about not limiting *Lehmann* to summary judgments. *See id.* at 214 (Baker, J., concurring).

**5.** Our dissenting colleague repeatedly mentions the Mother Hubbard clause included in the trial court's order, intimating that we rely on that to reach our conclusion. We do not. *Lehmann* holds that a Mother Hubbard clause is no longer an indication that the trial court

intended to·render a final judgment. 39 S.W.3d at 203–04. In reaching our conclusion, we rely solely on the finality language in the order that is virtually identical to the language *Lehmann* held would leave no doubt as to the finality of the judgment. *See id.* at 206.

**6.** Elizondo does not identify any language in the trial court's order creating any ambiguity. *Cf. Taub v. Dedman*, 56 S.W.3d 83, 87 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (holding that order that contained some finality language—but not all the language set out in *Lehmann*—was not final when it also stated that it was directed only to certain named defendants); *In re Granite Shop*, No. 02–08–410–CV, 2009 WL 485696, at *2–3 (Tex. App.—Fort Worth Feb. 24, 2009, orig. proceeding) (mem. op.) (directing trial court to vacate ambiguous order granting motion for partial summary judgment because, while order stated it disposed of all claims and parties, it also said plaintiff did not seek summary judgment against the individual defendants indicating claims against individual defendants remained pending).

mary-judgment motion.[7]

Our dissenting colleague contends that we are disregarding the *Lehmann* directive to look to the entire record to determine whether the order disposes of all parties and claims. But the Court instructed courts to do so only if the order was not clear and unequivocal. "[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party *or* unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann*, 39 S.W.3d at 205 (emphasis added). Because *Lehmann* uses the disjunctive "or," an order on a dispositive motion is final in either of two situations: (1) when it actually disposes of every pending claim and party, which requires a review of the record, or (2) when the order "clearly and unequivocally states that it finally disposes of all claims and all parties." *Id.* at 205–06. Only when an order granting a dispositive motion does not clearly and unequivocally dispose of all claims is it necessary to review the record to see whether the order nevertheless "actually" disposes of them all. *See id.* at 205.

Had the March 11 order not included clear and unequivocal finality language, we would look to the record to see if the order actually disposed of all parties and claims. *See id.* at 205–06; *Daredia*, 317 S.W.3d at 249 (holding that clear and unequivocal finality language in trial court's order was effective despite record showing a final judgment was improper). Because the March 11 order included language that evidenced a clear and unequivocal intent to render a final judgment, we are required to give effect to its clear and unequivocal language. *See Daredia*, 317 S.W.3d at 248.

Elizondo argues that the *Lehmann* finality rule is inapplicable because M & O's motion sought only to remove a lien and did not seek a judgment. He maintains that the March 11 order cannot be a judgment because it grants a motion that did not seek a partial summary judgment. Our dissenting colleague agrees and argues that neither *Lehmann* nor *Daredia* applies outside the summary judgment or default judgment context.[8] However, neither case limits its holding to summary judgments or default judgments. *See Henderson v. S. Farm Bureau Ins. Co.*, 370 S.W.3d 1, 4 n.4 (Tex. App.—Texarkana 2012, pet. denied)

---

7. *See, e.g., S. Mgmt. Servs., Inc. v. SM Energy Co.*, 398 S.W.3d 350, 357–58 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that summary-judgment order was final based on finality language, but reversing and remanding claims not raised in summary-judgment motion); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 362 (Tex. App.—Dallas 2009, pet. denied) (holding that order was final based on finality language but erroneous because motion for summary judgment raised only some of multiple claims asserted); *Underwater Servs., Inc. v. Offshore Drilling Co.*, No. 01–11–00889–CV, 2013 WL 2096640, at *2 n.2, *8 (Tex. App.—Houston [1st Dist.] May 14, 2013, no pet.) (mem. op.) (holding there was no question judgment was final and appealable because it contained unmistakable finality language, but reversing and remanding claims not addressed in summary-judgment

motions); *Dexter v. Strickland*, No. 04–09–00459–CV, 2010 WL 3582380, at *2 (Tex. App.—San Antonio Sept. 15, 2010, no pet.) (mem. op.) (holding trial court judgment was final based on finality language, but reversing and remanding claim not raised in summary-judgment motion).

8. Our dissenting colleague raises alarm that our holding would "automatically convert" any order "that mistakenly includes a Mother Hubbard clause and finality language"—even an order granting a motion for extension of time—"into a final judgment on the merits of the case." Such an order is not before us. The motion here was, in effect, a motion for partial summary judgment, granting dispositive relief on Elizondo's lien claim and awarding M & O attorneys' fees.

(observing that the *Lehmann* holding is not limited to summary judgments).

■ Even if *Lehmann* were to apply only to motions seeking judgments, the motion in this case did seek a partial judgment. M & O's summary motion sought an adjudication of Elizondo's lien claim and thus, in effect, sought a partial "summary judgment." The motion sought a declaration by the trial court that the lien filed by Elizondo on M & O's property was defective and should be removed.[9] Although our dissenting colleague contends that removal of a lien under section 53.160 is not an adjudication of a claim and therefore, the *Lehmann* rules do not apply, a lien *is* a claim allowed by statute for parties to secure payment. *See Daughters of Charity Health Servs. v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) (observing that lien against property "is necessarily a claim against its owner"); *McAllen Hosps., L.P.*

v. Gomez, No. 13–12–00421–CV, 2013 WL 784688, at *5 (Tex. App.—Corpus Christi Feb. 28, 2013, no pet.) (mem. op.) (holding that hospital lien is claim against patient).

■ Thus, a summary motion that seeks a declaration that a lien is invalid—as Elizondo's motion did—seeks a summary adjudication of that claim and operates, in effect, as a motion for partial summary judgment.[10] Our Court has previously addressed an appeal from a summary-judgment order resolving a lien and we did not hold that the judgment was not final because a lien is not a claim to be adjudicated.[11] Similarly, the Austin court has addressed a summary judgment resolving a lien without holding that a lien is not a claim.[12]

The trial court's adjudication of the lien, as well as all other claims and parties, may have been erroneous, but the *Lehmann* finality rules nevertheless apply. *See id.* at

9. M & O sought to remove the lien under Section 53.160 of the Texas Property Code and to obtain actual damages or $10,000, as well as attorney's fees and exemplary damages, under the Fraudulent Lien Act. *See* TEX. PROP. CODE ANN. § 53.160 (authorizing the filing of a "summary motion" to remove invalid or unenforceable lien); TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (authorizing recovery of actual damages or $10,000, whichever is greater, and court costs, attorney's fees, and exemplary damages if trial court finds lien is fraudulent). M & O sought to remove the lien on the grounds that Elizondo was not the proper person to file a lien, misapplication of construction trust funds was not a valid basis for a lien, and the lien was fraudulent. M & O gave 21 days' notice before the date of the hearing, as required by the statute. *See* TEX. PROP. CODE ANN. § 53.160(c). The trial court's March 11 order granted the motion, without stating the grounds, and awarded M & O attorney's fees in the trial court and on appeal.

10. *See Wesco Distrib., Inc. v. Westport Grp, Inc.*, 150 S.W.3d 553, 555 (Tex. App.—Austin 2004, no pet.) (affirming judgment granting summary motion to remove lien under Chapter 53 of Property Code); *Big H Constr, Inc. v. Hensley*, No. 01–10–00379–CV, 2011 WL 1233594, at *1–2 (Tex. App.—Houston [1st Dist.] March 31, 2011, no pet.) (mem. op.) (reversing trial court order granting summary judgment under Section 53.160); *Ibarra v. Nicholes*, No. 01–06–00762–CV, 2007 WL 2214889, at *1 (Tex. App.—Houston [1st Dist.] Aug. 2, 2007, pet. denied) (mem. op.) (affirming order granting summary judgment, dismissing counterclaims, and vacating lien).

11. *See Blevins v. Andrews*, No. 01–08–00598–CV, 2010 WL 1611382, at *3–4 (Tex. App.—Houston [1st Dist.] Apr. 22, 2010, no pet.) (mem. op.) (affirming trial court order granting "summary motion to remove an invalid lien").

12. *See Ready Cable, Inc. v. RJP S. Comfort Homes, Inc.*, 295 S.W.3d 763, 767 (Tex. App.—Austin 2009, no pet.) (reversing summary judgment and remanding because (1) trial court should have granted "summary motion seeking denial of RJP's summary motion pursuant to property code section 53.160," and (2) counterclaims remained pending).

200. The *Lehmann* Court held that even if a defendant moves for summary judgment on only one of a plaintiff's multiple claims, a trial court's order that renders judgment that the plaintiff take nothing on all claims is a final, but erroneous, judgment. *Id.* And in two subsequent decisions the Court reiterated that, while a judgment may be erroneous, finality language renders a judgment final and appealable.[13] Intermediate appellate courts have reached the same conclusion.[14]

Our holding that the March 11 order is final adheres not only to the rule announced in *Lehmann* but also to the Court's reaffirmation of it in *Daredia*.[15] In *Daredia*, the trial court's order contained finality language similar to that in the March 11 order, and the Court held that the inadvertent rendition of a final judgment was "nonetheless unequivocal, and therefore effective." 317 S.W.3d at 249. The same is true here. The March 11 order is final even if it grants more relief than was sought or intended. *See id.* at 249; *Lehmann*, 39 S.W.3d at 206.

■■■ Our dissenting colleague notes that *Lehmann* states the fundamental principle "that the right of appeal is not lost by an overly technical application of

the law." But M & O had the opportunity to appeal the March 11 order. Our ruling in this mandamus cannot affect a right M & O waived by failing to pursue it and our application of the *Lehmann* rule is not overly technical. The principle here is simple: an order granting a dispositive motion that states it is a final judgment and contains finality language essentially identical to that quoted in *Lehmann* is a final judgment. Thus, the party against whom a dispositive motion is granted is aware that it should read the proposed order and object if it is overly broad and contains finality language when the motion sought to dispose of only some claims or parties. *Lehmann* ensures that "[s]implicity and certainty in appellate procedure" determine the time for perfecting an appeal. 39 S.W.3d at 205. The rule here, as in *Lehmann*, is simple and certain: unequivocal finality language in an order granting a dispositive motion means the order is a final judgment.

■■■ We also reject the contention that the *Lehmann* finality rule may be avoided on the basis that a trial court is without the power to grant a final judgment on a motion seeking only partial relief. In *Lehmann*, the concurrence asserted that a trial court had no jurisdiction to grant

13. *See Daredia*, 317 S.W.3d at 249 (holding that judgment with *Lehmann*-like finality language was effective even if parties did not intend to seek final judgment); *Jacob v. Satterwhite*, 65 S.W.3d 653, 655 (Tex. 2001) (per curiam) (holding that judgment was final for purposes of appeal because it contained finality language, but reversing and remanding breach-of-contract claim not addressed in summary-judgment motion).

14. *See Tex–Fin, Inc. v. Ducharne*, 492 S.W.3d 430, 437 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that, regardless of whether the trial court's ruling was erroneous or without legal basis, trial court's "final summary judgment" order, which granted motion "in part" but also contained *Lehmann* finality

language, was final and appealable); *Greatwood Cmty. Ass'n, Inc. v. Ofor*, No. 01–11–00509–CV, 2012 WL 5989425, at *2 (Tex. App.—Houston [1st Dist.] Nov. 29, 2012, no pet.) (mem. op.) (reversing judgment because summary-judgment order was final based on order's finality language but was erroneous as granting more relief than intended).

15. The judgment in *Daredia* was a default judgment and it—like the order here—was inadvertently broader than intended. *See* 317 S.W.3d at 248. The Court did not let the scope of the relief requested in the motion or the other pleadings in the case trump the judgment's language which "clearly and unequivocally indicates that it is intended to be final." *Id.* at 249.

more relief than requested, but the Court disagreed. *Lehmann*, 39 S.W.3d at 207. It explained, "We do not agree that a court's *power* to act, as distinct from the proper exercise of that power, is defined by a party's request for relief." *Id.* Thus, the trial court's jurisdiction to render a final judgment is not defined by the relief sought in the motion. The March 11 judgment may be erroneous, but it is final.

In conclusion, the March 11 order removes the lien, awards attorney's fees, and contains finality language almost identical to the language the *Lehmann* Court held would unequivocally express the intent to render a final judgment disposing of all parties and claims. Therefore, the March 11 order is final.

*The May 9 amended order impermissibly attempts to correct a judicial error after expiration of plenary power*

 Having determined that the March 11 order was a final judgment, we must next address whether the trial court had the power to enter the May 9 amended order. The amended order was signed almost 60 days after the final judgment, well after expiration of the trial court's plenary power. *See* TEX. R. CIV. P. 329b(d), (f); *Daredia*, 317 S.W.3d at 250. Elizondo contends that the trial court retained the power to amend its order—even though plenary power expired—because the amended order corrected a clerical error, not a judicial error.

 When deciding if a nunc pro tunc order corrects a judicial or a clerical error, we look to the judgment actually rendered by the trial court, rather than the one it might have rendered. *See Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986). The determination whether an error in a judgment is judicial or clerical is a question of law that we review de novo. *See id.* at 232.

 A judicial error "arises from a mistake of law or fact that requires judicial reasoning to correct" and "occurs in the rendering, rather than the entering of the judgment." *Barton v. Gillespie*, 178 S.W.3d 121, 126 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see In re D & KW Family, L.P.*, No. 01-11-00276-CV, 2012 WL 3252683, at *5 (Tex. App.—Houston [1st Dist.] Aug. 9, 2012, orig. proceeding) (mem. op.). Examples of judicial errors include changing an award of property in the judgment to a different person, *see Mathes v. Kelton*, 569 S.W.2d 876, 877 (Tex. 1978), adding a party to the judgment, *see LaGoye v. Victoria Wood Condo. Ass'n*, 112 S.W.3d 777, 784 (Tex. App.—Houston [14th Dist.] 2003, no pet.), and changing the judgment to reflect dismissal of one, rather than two, defendants. *See In re Rollins Leasing, Inc.*, 987 S.W.2d 633, 637 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding).

 "A clerical error does not result from judicial reasoning, evidence or determination." *Riner v. Briargrove Park Prop. Owners, Inc.*, 976 S.W.2d 680, 682 (Tex. App.—Houston [1st Dist.] 1997, no writ). Instead, a clerical error is one made in the transcription or entry of a judgment that causes the judgment to incorrectly state what was actually rendered. *See Escobar*, 711 S.W.2d at 231–32; *Naime v. Soliman*, No. 04-11-00865-CV, 2012 WL 2835161, at *3 (Tex. App.—San Antonio July 11, 2012, no pet.) (mem. op.) (listing examples of clerical errors including correction of date of judgment, party name, and numerical errors).

 "[W]hether the court pronounced judgment orally and the terms of that pronouncement are questions of fact." *Escobar*, 711 S.W.2d at 232. The legal question of whether the error was judicial or clerical does not arise until "the trial court factually determines whether it pre-

viously rendered judgment and the judgment's contents." *Id.* Evidence of the judgment actually rendered may come from witness testimony, docket entries, or the trial judge's personal recollection. *See id.*

■ According to Elizondo, the trial judge's personal recollection demonstrates that the correction was clerical, not judicial. *See Rawlins v. Rawlins*, 324 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that, if trial court judge who rendered original judgment grants nunc pro tunc, "a presumption arises that the judge's personal recollection supports the finding of clerical error"), *abrogated on other grounds by In re A.M.C.*, 491 S.W.3d 62 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding). But the trial court's nunc pro tunc does not indicate the error was clerical—that is, that the judgment entered differs from the judgment rendered. Instead, the nunc pro tunc and the trial court's recollection reflect that the entered and rendered judgment should not have been rendered at all. An error in rendering judgment is a judicial error. *See Escobar*, 711 S.W.2d at 231; *Finlay v. Jones*, 435 S.W.2d 136, 138 (Tex. 1968).

■ Although the judgment the trial court signed was prepared by M & O and contained a mistake, once the trial court signed it, "the mistake [became] part of the court's judgment as actually rendered and it [was] therefore a judicial error rather than a clerical error." *D & KW Family*, 2012 WL 3252683, at *6 (citing *Daredia*, 317 S.W.3d at 250); *see Dikeman v. Snell*, 490 S.W.2d 183, 185–86 (Tex. 1973) (orig. proceeding) (provisions attorney allegedly inserted in judgment by mistake "become part of the court's judgment and therefore are judicial errors"); *In re Fuselier*, 56 S.W.3d 265, 268 (Tex. App.—Houston [1st Dist.] 2001, orig. proceeding) (attorney's drafting error in proposed judgment that

trial court signs is not clerical error). "[E]ven if the court renders incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition." *Escobar*, 711 S.W.2d at 232. The record does not indicate that the trial court "actually rendered, orally or otherwise, a judgment different from the one it signed and entered." *D & KW Family*, 2012 WL 3252683 at *7; *see Barton*, 178 S.W.3d at 127. Therefore, we must reject Elizondo's argument that the error here was clerical.

Because the amended order corrected a judicial error, the trial court had no power to sign the amended order after its plenary power expired, and thus, the amended order is void and was an abuse of discretion. *See Daredia*, 317 S.W.3d at 250; *Dikeman*, 490 S.W.2d at 186. M & O is therefore entitled to mandamus relief. *See Sw. Bell Tel.*, 35 S.W.3d at 605; *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (per curiam).

We conditionally grant M & O's petition for writ of mandamus and direct the trial court to vacate its amended order dated May 9, 2016. *See* Tex. R. App. P. 52.8(c). We are confident that the trial court will promptly comply. The writ will issue only if it does not.

Evelyn V. Keyes Justice, Dissenting

The majority holds that the trial court's "Order on Defendants' Summary Motion to Remove Invalid Lien" that removed a lien and assessed attorney's fees is actually a final judgment because the Order mistakenly contained a Mother Hubbard clause and finality language that called the Order a "final judgment" that disposed of all claims and parties and was appealable. The majority holds that the mistake was not a clerical error but a judicial error that was discovered and corrected outside the trial court's period of plenary power; therefore, the case was dismissed, was not

timely appealed, and cannot be resurrected. It thus vacates the trial court's order correcting the error, and it reinstates the order removing the lien as the final and appealable judgment of the trial court on the untried merits of the case.

I respectfully dissent. In my view, the majority opinion contradicts the Texas Supreme Court's holding in *Lehmann v. Har–Con Corp.*, which it purports to follow, and it misrepresents the scope of the holding in a successor case, *In re Daredia*. The opinion also contradicts a number of other established principles of law. It therefore presents an issue of fundamental importance to the jurisprudence of this State. I would deny the petition for writ of mandamus.

## Background

This dispute arises out of the cost of construction of a home under a contract between Paul Elizondo, the homeowner, and the builder, M & O Homebuilders, Inc., Orlando Cuello, Maria De Jesus Gamez, and Texas Homebuilders, LLC (collectively, "M & O"). Elizondo filed suit against M & O for negligence, breach of contract, breach of warranty, fraud and misrepresentation, deceptive trade practices, conversion, conspiracy, and fraudulent conveyance. Elizondo also filed a lis pendens and, later, a lien on property owned by M & O, alleging that a structure on the property was likely built using misapplied construction trust funds from the construction of Elizondo's home. Elizondo then filed an application for a temporary injunction to prevent M & O from selling, transferring and/or encumbering the property until completion of this litigation, which the trial court granted.

M & O filed a "Summary Motion to Remove an Invalid Lien" under Property Code section 53.160 and sought to recover damages and its attorney's fees under the Fraudulent Lien Act, Civil Practice and Remedies Code section 12.002. The motion alleged that Elizondo's lien on M & O's property was defective and without legal basis. Elizondo agreed that the lien was no longer necessary with the temporary injunction in place. M & O submitted a proposed "Order on Defendants' Summary Motion to Remove Invalid Lien." The Order, which the trial court signed on March 11, 2016, stated that the court was "of the opinion that Judgment should be rendered for Plaintiff"—Elizondo. However, it actually ordered the lien removed and awarded the defendant, M & O, its attorney's fees on the motion. The Order also contained a Mother Hubbard clause and finality language, which stated, "This judgment is final, disposes of all claims and all parties, and is appealable. All relief not granted herein is denied."

In late April, Elizondo asked the trial court to correct the Order by removing the finality language that had admittedly been included by mistake in the proposed order. The trial court agreed it had no intention of entering a final judgment in the case and signed an "Amended Order" on May 9, 2016, deleting the Mother Hubbard clause and the finality language. M & O contends the trial court was without plenary power to sign the amended order. The majority agrees and declares that the error was a judicial error and not a clerical error, that the order could not be amended after the trial court lost its plenary power thirty days after entry of the incorrect March 11, 2016 Order, and that, therefore, the entire case was dismissed on the merits by that incorrect order and cannot be resurrected. I strongly disagree.

## Discussion

The majority bases its entire opinion on its wholly unjustified conclusion that the correctly named "Order on Defendants'

Summary Motion to Remove Invalid Lien" was actually a *final judgment on the merits* of the case. It observes that a trial court has plenary power to grant a new trial or to modify a judgment only within thirty days after the judgment is signed, although the trial court "may at any time correct a clerical error in the record of a judgment and render judgment nunc pro tunc under Rule 316." *See* TEX. R. CIV. P. 329b(d), (f). It then reasons that the March 11 Order is a final judgment "because it contains an unequivocal expression of the trial court's intent to dispose of the case"—namely the Mother Hubbard clause and finality language; and because the Order contains this language it is a final judgment that disposes of the case on the merits. *See* Op. at 104–05. Following this circular reasoning, the majority concludes that the Mother Hubbard clause and finality language cannot be a mistake or a clerical error subject to correction nunc pro tunc. *See* Op. at 110. On this reasoning, any order on any motion that mistakenly includes a Mother Hubbard clause and finality language—even a motion for extension of time, or a motion to abate, or a motion to dismiss counsel—is automatically converted into a final judgment on the merits of the case. Clearly this result is not intended by *Lehmann*.

Every aspect of the majority opinion depends on the majority's determination that the order entered by the trial court removing the lien placed by Elizondo on M & O's property is a final judgment because it contains a Mother Hubbard clause and finality language. But the majority reaches this conclusion on reasoning that is, in fact, directly contrary to *Lehmann*.

First, the majority mischaracterizes M & O's motion as a motion for "a partial summary judgment." Op. at 106. But its own opinion belies this characterization of the motion. The majority states:

M & O sought to remove the lien under § 53.160 of the Texas Property Code and to obtain actual damages or $10,000, as well as attorney's fees and exemplary damages, under the Fraudulent Lien Act. M & O sought to remove the lien on the grounds that Elizondo was not the proper person to file a lien, misapplication of construction trust funds was not a valid basis for a lien, and the lien was fraudulent. M & O gave 21 days' notice before the date of the hearing, as required by the statute. The trial court's March 11 order granted the motion, without stating the grounds, and awarded M & O attorney's fees in the trial court and on appeal.

Op. at 107 n.9 (internal citations omitted).

M & O did not seek a "partial summary judgment" by filing a summary motion to remove the lien placed by Elizondo; nor are proceedings under section 53.160 treated as summary judgment proceedings under Texas Rule of Civil Procedure 166a. The statutes relating to summary removal of an invalid or unenforceable lien do not dispose of any claims or parties, as a summary judgment or partial summary judgment may.

A party may file a motion for summary removal of an invalid or unenforceable lien in a suit brought to foreclose a lien or to declare a claim or lien invalid or unenforceable. TEX. PROP. CODE ANN. § 53.160(a) (West 2014). The movant must provide at least twenty-one days' notice of the hearing on the motion. *See id.* § 53.160(c). At the hearing, the lien claimant bears the burden of proving notice of the claim and affidavit of lien was provided pursuant to Property Code Chapter 53, and the movant bears the burden of establishing that the lien should be removed for one of seven specific grounds listed in section 53.160. *See id.* § 53.160(b), (d). If the trial court determines that the movant is not

entitled to removal of the lien, the court shall enter an order denying the motion, and if the court determines that the movant *is* entitled to removal, the court shall enter an order removing the lien. *Id.* § 53.160(e); *see Big H. Constr., Inc. v. Hensley*, No. 01–10–00379–CV, 2011 WL 1233594, at *2 n.2 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (stating that in section 53.160 proceeding, trial court is only authorized to remove lien and may not invalidate parties' contract or summarily rule on other claims raised by parties). That is all that a summary proceeding to remove a lien does.

Section 53.160 and the two statutes that follow it in the Property Code contemplate that a ruling on a summary motion to remove a lien does not finally resolve any of the issues between the parties. Section 53.160(e) expressly recognizes that an order on a summary motion is interlocutory and may not be appealed. Tex. Prop. Code Ann. § 53.160(e). Section 53.160(f) provides that any admissible evidence offered at the hearing on the summary motion may be admitted in the trial on the merits of the parties' claims, but the trial court's order on the summary motion "is not admissible as evidence in determining the validity and enforceability of the claim or lien." *Id.* § 53.160(f). This section thus unequivocally ensures that a ruling on a summary motion to remove an invalid or unenforceable lien is not to be understood as a final disposition of the lien's validity or enforceability.

Furthermore, section 53.161—governing bond requirements after entry of an order to remove a lien—provides that, in an order removing a lien, the trial court shall set the amount of security the lien claimant must provide to stay removal, and the amount must be a reasonable estimate of the costs and attorney's fees the movant is likely to incur in the proceeding to determine the validity or enforceability of the lien. *Id.* § 53.161(a) (West 2014). Additionally, section 53.162 provides that if a removal order is not stayed and the lien claimant later obtains a final judgment in the suit establishing the validity of the lien, the final judgment revives the removed lien, and the claimant may foreclose on the lien. *Id.* § 53.162(a)–(b) (West 2014). These two statutes thus also contemplate that proceedings concerning the lien's validity—to say nothing of proceedings related to other claims between the parties—will continue after the trial court rules on the summary motion to remove the lien. That is exactly the opposite of the majority's ruling on the scope and effect of the "Order on Defendants' Summary Motion to Remove Invalid Lien" in this case.

The majority also states that the March 11 order removes the lien and awards attorney's fees. Op. at 108–09. And, it observes that the order "contains finality language almost identical to the language the *Lehmann* Court held would unequivocally express the intent to render a final judgment disposing of all parties and claims." Op. at 109. As a result, it holds that the order "is final even if it grants more relief than was sought or intended." Op. at 108.

The lesson the majority takes from *Lehmann* is, in fact, exactly the *opposite* from that actually taught. The supreme court said it best:

> In the past we have tried to ensure that the right to appeal is not lost by an overly technical application of the law. Fundamentally, this principle should guide in determining whether an order is final. Simplicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal. From the cases we have reviewed here, we conclude that *when there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal*

*unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties. An order that adjudicates only the plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims.* An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. *An order does not dispose of all claims and all parties merely because it is entitled "final", or because the word "final" appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case.* Language that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties; but language that "plaintiff take nothing by his claims against X" when there is more than one defendant or other parties in the case does not indicate finality.

*To determine whether an order disposes of all pending claims and parties, it may of course be necessary for the appellate court to look to the record in the case.* Thus, in the example just given, if the record reveals that there is only one plaintiff and only one defendant, X, the order is final, but if the record reveals the existence of parties or claims not mentioned in the order, the order is not final. On the other hand, an order that expressly disposes of the entire case is not interlocutory merely because the record fails to show an adequate motion or other legal basis for the disposition. The record may help illumine whether an order is made final by its own language, so that an order that all parties appear to have treated as final may be final despite some vagueness in the order itself, while *an order that some party should not reasonably have regarded as final may not be final despite language that might indicate otherwise.*

*Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205–06 (Tex. 2001) (emphasis added).

Here, the majority does exactly the opposite of what the *Lehmann* court instructed reviewing courts to do. It "ensure[s] that the right to appeal is ... lost by an overly technical application of the law." *Id.* at 205. It concludes, directly contrary to *Lehmann*, "that when there has not been a conventional trial on the merits," an order *is* final for purposes of appeal even though it does *not* "actually dispose[ ] of every pending claim and party." *Id.* And this is the case even though the Order patently does not dispose of a *single* claim on the merits; even though, as an order pursuant to a summary proceeding under Property Code section 53.160 it *could not* do so; and even though it contains contradictory language as to which party even prevailed on the motion—plaintiffs or defendants.[1]

---

1. The trial court's March 11, 2016 Order states: "[T]he Court **GRANTS** Defendants' [M & O's] Summary Motion to Remove Invalid Lien and is of the opinion that Judgment should be rendered for Plaintiff [Elizondo] as follows ...."

Rather than taking this language as further evidence that the trial court mistakenly signed an order adapted from a form order on a motion for final summary judgment in another case, the majority simply disregards this evidence as immaterial to its

The majority disregards the supreme court's admonitions in *Lehmann* that "[a]n order that adjudicates only the plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims" and that "[a]n order does not dispose of all claims and all parties merely because it is entitled 'final', or because the word 'final' appears elsewhere in the order, or even because it awards costs." *Id.* Rather, it decides that the trial court's "Order" on M & O's "Summary Motion to Remove Invalid Lien," which only removes the lien placed by Elizondo and grants attorney's fees, actually disposes of the entire case on the merits—*none* of which were before the trial court or adjudicated at the time.

The majority also disregards the supreme court's instruction that "[t]o determine whether an order disposes of all pending claims and parties, it may of course be necessary for the appellate court to look to the record in the case." *Id.* at 205–06. The record here demonstrates that the March 11 Order is "an order that some party should not reasonably have regarded as final ... despite language that might indicate otherwise." *Id.* at 206. Therefore, I cannot agree that the majority has construed *Lehmann* correctly or has followed its guidance. I believe it has done just the opposite.

Nor do I agree with the majority's reliance on *In re Daredia* as support for its determination that the March 11 Order removing Elizondo's lien is a final judgment that disposes of the case on the merits. *See* 317 S.W.3d 247 (Tex. 2010) (per curiam). *Daredia* applied *Lehmann* in the context of a default judgment entered in a credit card issuer's collection action against a corporation and an individual. *Id.* at 248. The default judgment did not reference the individual, but recited the default of the corporation, awarded damages and attorney fees against the corporation, and stated that the judgment disposed of all parties and all claims and was therefore final. *See id.* No one appealed. *Id.* The credit card company moved to reopen the case fifteen months later to proceed against the individual, seeking a correction in the judgment nunc pro tunc. *Id.* The supreme court held that the default judgment, which recited that it was a final judgment and disposed of all parties, was, in fact, a final judgment that could not be corrected nunc pro tunc. *Id.* at 249. The court stated that "the language of the judgment in this case clearly and unequivocally indicates that it is intended to be final" and that dismissal of the individual, although perhaps inadvertent, was "nonetheless unequivocal, and therefore effective." *Id.*

Neither *Lehmann* nor *Daredia* expands the power of a Mother Hubbard clause and finality language to establish the finality of a judgment beyond the summary judgment or default judgment context. Nor do any of the other cases cited by the majority expand the power of a Mother Hubbard clause and finality language that was admittedly included in a form order by mistake to confer final judgment status to statutory interlocutory orders on collateral matters having nothing to do with the merits of the case. The summary motion for removal of an invalid or unenforceable lien pursuant to Property Code section 53.160 is fundamentally different from a summary judgment, a default judgment, or any of the cases cited by M & O in which

holding. The Amended Order substitutes language correctly stating that "the Court GRANTS Defendants' Summary Motion to

Remove Invalid Lien and enters the following Orders ...."

Mother Hubbard clauses have been used to create a final judgment, all of which involved parties seeking final disposition of an aspect of their case.[2]

For all of the foregoing reasons, I believe that the majority opinion in this case is erroneous and creates unsustainable precedent in the First Court of Appeals. I would follow what I believe to be the correct interpretation of *Lehmann* and *Daredia*, which is contrary to the majority's opinion. I would conclude that the finality language mistakenly included in the March 11 Order did not convert that particular interlocutory order into a final judgment and that the trial court properly amended the March 11 Order to remove the Mother Hubbard clause and finality language.

### CONCLUSION

I would deny M & O's petition for writ of mandamus.

**2.** *See In re Cobos*, 994 S.W.2d 313, 314–15 (Tex. App.—Corpus Christi 1999, orig. proceeding) (holding that Mother Hubbard clause in agreed judgment memorializing settlement agreement between plaintiffs and two of thirteen defendants created final judgment and disposed of entire case); *Harris Cty. Flood Control Dist. v. Adam*, 988 S.W.2d 423, 425–27 (Tex. App.—Houston [1st Dist.] 1999) (holding that Mother Hubbard clause in order severing claims against two of six defendants after trial court granted summary judgment in their favor created final judgment in severed cause but not in original cause), *pet. denied*, 66 S.W.3d 265 (Tex. 2001) (per curiam); *Polley v. Odom*, 957 S.W.2d 932, 942–43 (Tex. App.—Waco 1997) (holding that trial court, after directing verdict on breach of contract claim, rendered final judgment when it included Mother Hubbard clause in its judgment), *vacated*, 963 S.W.2d 917 (Tex. App.—Waco 1998, no pet.) (per curiam); *Webb v. HCM Claim Mgmt. Corp.*, No. 07–96–0369–CV, 1998 WL 16033, at *1 (Tex. App.—Amarillo 1998, pet. denied) (mem. op., not designated for publication) (noting, in holding that court lacked appellate jurisdiction over interlocutory appeal from order granting plea to the jurisdiction filed by nongovernmental entities, that order was not final, in part because it did not contain Mother Hubbard clause).